## BARKER PAINTING CO. v. BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPERHANGERS OF AMERICA.

Court of Appeals of District of Columbia.

Submitted October 5, 1927. Decided November 7, 1927.

Petition for Rehearing Denied December 30, 1927.

No. 4587.

**1. Injunction ⬅️101(2)—Corporation employer, undertaking painting job outside home city, held not entitled to injunction restraining enforcement of union labor regulations affecting employment, working hours, and compensation.**

New York corporation, employing union painters in Washington, *held* not entitled to injunction restraining enforcement of union labor regulations, requiring employer to pay higher rate of pay and give shorter working week, prevailing as between the two localities, and to employ 50 per cent. of painters engaged on contract from Washington union, where there was no strike or intimidation, or interference with right to employ nonunion painters.

**2. Injunction ⬅️101(2)—Employer cannot compel union painters to work for it without their consent.**

Employer of painters cannot compel union painters to work for it on its own terms, regardless of their consent.

**3. Injunction ⬅️101(2)—Loss to employer, refusing to comply with union labor regulations, because of refusal of union painters to work for it, is damnum absque injuria.**

Where refusal of union painters to work for employer, undertaking painting job outside home city, is caused by refusal to comply with union labor regulations relative to such employment, and results in pecuniary loss to employer, such loss is damnum absque injuria.

**4. Monopolies ⬅️12(2)—Enforcement of union regulations governing wages and working hours in employment of outside contractor, under penalty of fine or expulsion from union, held not conspiracy in violation of anti-trust laws; "legitimate objects" (Clayton Act, § 6 [15 USCA § 17]).**

Enforcement by labor union of regulations governing wages and working hours in employment of union painters, by contractor undertaking job outside home city, under penalty of fine or expulsion from union, *held* not to constitute conspiracy in violation of anti-trust laws, under Clayton Act, § 6 (15 USCA § 17), since such regulations are within "legitimate objects" of such unions.

**5. Trade unions ⬅️4—Labor unions may punish member by fine, suspension, or expulsion for infraction of rules.**

It is not unlawful for labor unions to punish member by fine, suspension, or expulsion for infraction of union rules, since membership in union is purely voluntary.

**6. Injunction ⬅️101(2)—Enforcement of union labor regulations governing wages, working hours, and employment by outside contractor held not enjoined, as discriminatory, unreasonable, arbitrary, or oppressive.**

Enforcement of union labor regulations providing that contractor, undertaking painting job outside home city, must pay union painters higher rate of pay and give them shorter working week prevailing as between localities, and employ at least 50 per cent. of painters engaged on local contract from among members of local union, will not be enjoined as being discriminatory, unreasonable, arbitrary, or oppressive.

Appeal from Supreme Court of District of Columbia.

Suit by the Barker Painting Company against the Brotherhood of Painters, Decorators, and Paperhangers of America. From a decree dismissing the bill of complaint, plaintiff appeals. Affirmed and remanded.

W. C. Sullivan, of Washington, D. C., for appellant.

F. P. Sheehy and V. A. Sheehy, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from a decree of the lower court, dismissing a bill of complaint filed by appellant for an injunction to prevent the enforcement against it of certain union labor regulations with reference to the employment of union labor by appellant.

It appears from the record that appellant is a corporation located in New York City, and that it takes contracts for inside and outside painting and decorating throughout the United States. When performing such contracts in cities other than New York, appellant employs union painters procured in New York City, together with others procured at the place where the contract is to be performed. The Brotherhood of Painters, Decorators, and Paperhangers of America, Inc., is a union labor organization affiliated with the American Federation of Labor, and is composed of various local unions throughout the country. The latter severally exercise local jurisdiction within certain prescribed areas, and only members of such local unions are eligible to be members of the incorporated organization. The Brotherhood has adopted certain rules and regulations relating to union labor throughout the country, and any infraction of these regulations by a member of a local union may be punished by fine, suspension, or expulsion from the union.

Among the regulations adopted and thus enforced by the Brotherhood are those commonly known as the "higher wage," "shorter week," and "fifty per cent." rules. These provide that, where a contractor undertakes a painting job "outside his home city or town, and in a locality where a district council or local council exists," he shall pay union painters the higher rate of pay and give them the shorter working week prevailing as between the several localities, and shall also employ at least 50 per cent. of the painters engaged upon the local contract from among the members of the local union. The rules also provide that no union authority shall have power to grant exclusive or special privileges to any local union belonging to the Brotherhood, that all local conditions shall be strictly adhered to, and that the shorter workday and the higher wage scale of either locality, as well as the 50 per cent. employment regulation, shall prevail in all cases.

In the year 1923 the appellant entered into a contract to do the painting work for the Walker Hotel in the city of Washington, District of Columbia, for the sum of $70,000, the work to be performed under penalties within a specified time. The New York rate of pay for union painters was $10.50 per day of 8 hours, working 5 days a week, while the Washington rate was $9 per day of 8 hours, working 5½ days a week. Accordingly the enforcement of the higher wage rule under these circumstances would compel appellant, if employing union painters, to pay $10.50 a day for those employed upon the contract, whereas any contractor located in Washington would be able to employ union painters for the same work at $9 per day. Appellant was fully informed concerning these union regulations before it entered into the contract with the hotel company, but it intended to protest against their observance or enforcement in relation to this contract. Accordingly, after taking the contract it conferred with officers of the local union for the purpose of inducing them to waive the higher wage and shorter time requirements; but this request was refused, and appellant was informed that the members of the local union would not be permitted to work upon the contract except in accordance with all of the union rules.

Appellant nevertheless sought to secure union painters by inserting advertisements in the local newspapers, and in answer thereto a number of local union painters appeared at appellant's office at the place of work. These were met there, however, by officers of the union, who informed them that appellant intended to disregard the aforesaid union rules, whereupon the union painters refused to accept the employment and left the place. Appellant then filed its complaint in the lower court, claiming that the rules were discriminatory, unreasonable, arbitrary, and tending to create a monopoly, and that the enforcement thereof by the Brotherhood and the local union, under threat of fine, suspension, or expulsion, constituted a conspiracy, and was a violation of the anti-trust laws of the United States, and, if permitted, would result in irreparable injury to appellant and to appellant's property. Appellant therefore prayed for a temporary restraining order, and for a perpetual injunction against the enforcement thereof. A temporary restraining order was accordingly granted by the court, but upon final hearing the court entered a decree against appellant. This appeal followed.

[1-3] We think that the decree of the lower court was right. It is clear that the union painters were free either to accept or reject employment upon the terms offered by appellant, and correspondingly that appellant was free to accept or reject the terms of employment offered by the men. In this instance there was no strike or intimidation, nor any threat of disorder or interference with appellant's right to employ nonunion painters. It cannot be claimed that there was any breach of contract by the men; the latter simply refused to enter into any contract of employment upon the terms offered by appellant. It is certain that appellant could not compel the union painters to work for it upon its own terms, regardless of their consent. Adair v. United States, 208 U. S. 174, 28 S. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764; National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Jersey City Printing Co. v. Cassidy, 63 N. J. Eq. 759, 53 A. 230. And if the refusal of the union painters to work under these circumstances resulted in pecuniary loss to appellant, such loss would be damnum absque injuria. My Maryland Lodge v. Adt, 100 Md. 238, 59 A. 721, 68 L. R. A. 752; Purvis v. United Brotherhood, 214 Pa. 348, 354, 358, 63 A. 585, 12 L. R. A. (N. S.) 642, 112 Am. St. Rep. 757, 6 Ann. Cas. 275.

[4] As for appellant's charge that the enforcement of the contested rules by the unions under penalty of fine or expulsion constitutes a conspiracy in violation of the

anti-trust laws, we think this charge is answered by section 6 of the Clayton Act, which provides that the labor of a human being is not a commodity or article of commerce, and that nothing contained in the Anti-Trust Act shall be construed to forbid the existence and operation of labor organizations, instituted for the purpose of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the anti-trust laws. 38 Stat. 731, c. 323, § 6 (15 USCA § 17). Under these provisions the painters' unions, and the individual members thereof, are entitled to carry out the legitimate objects of their organizations, provided no unlawful means be employed to that end. The adoption of regulations fixing the wages of union labor, together with provisions restricting the number of hours of labor per day and of days per week, are within "the legitimate objects" of such unions within the sense of the Clayton Act. Otherwise the provisions of the act regarding labor unions would be futile.

[5, 6] Moreover, it is not unlawful for such unions to punish a member by fine, suspension, or expulsion for an infraction of the union rules, since membership in the union is purely voluntary. 24 Cyc. 824. Nor do we think that the regulations now in question are discriminatory, unreasonable, arbitrary, or oppressive. The higher wage and shorter week rules were adopted by the Brotherhood prior to the year 1913; the 50 per cent. rule in 1922; and they have been in force ever since. They are designed to meet a situation which without regulation would be productive of confusion and disorder for union labor. The cost of living is higher in some places than in others; therefore union wages vary in different localities. If a contractor employs union labor upon work in his own city, he must pay the union wages of that locality; but, if he moves his force of local labor to another city, he may meet there with a higher or lower union wage scale, as well as with different limitations as to periods of labor. It was to meet these contingencies that the rules now in question were adopted; and this case does not involve their wisdom, but only their legality. The rules do not discriminate against any particular person or place, and are uniform in their operation throughout the country. As far as appears, they were regularly adopted in good faith by the Brotherhood, they govern the conduct of its members only, and the members are lawfully entitled to obey them by abstaining from work in applicable cases if they so desire. Jersey City Printing Co. v. Cassidy, 63 N. J. Eq. 759, 53 A. 230.

The present issue has been before the courts in various cases, and the weight of authority is decidedly adverse to appellant's claim. Barker Painting Co. v. Local Union, etc. (D. C.) 12 F.(2d) 945; Barker Painting Co. v. Brotherhood of Painters (C. C. A.) 15 F.(2d) 16; New Jersey Painting Co. v. Local Union No. 26, 96 N. J. Eq. 632, 126 A. 399, 47 A. L. R. 384.

Various arguments are presented by appellant, which we have considered, but have not set out specifically in this opinion; for we consider it sufficient to say that in our judgment appellant's case is without support in law.

The decree of the lower court is affirmed, with costs, and the cause is remanded, for such further orders as are necessary with reference to the injunction pendente lite entered in the case below.